# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL     'O'

| | | | |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Present: The Honorable    **CHRISTINA A. SNYDER**

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:     Attorneys Present for Defendants:

Not Present     Not Present

**Proceedings:**    (IN CHAMBERS) - DEFENDANT TRANSAMERICA'S MOTION TO DISMISS (Filed August 29, 2018, dkt. 23)

## I. INTRODUCTION

On July 19, 2018, plaintiff Michael K. Hamra, as trustee on behalf of the Sam F. Hamra, Jr. and June S. Hamra irrevocable trust (the "Trust"), filed this action against Transamerica Life Insurance Company ("Transamerica") challenging a monthly deduction rate ("MDR") increase for the life insurance policy purchased by plaintiff to protect joint insureds Sam Hamra and June Hamra. Dkt. 1 ("Compl."). Specifically, the Complaint alleges claims for: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) tortious breach of the duty of good faith and fair dealing; (4) violation of California's Unfair Competition Law ("UCL"), pursuant to Cal. Bus. & Prof. Code §§ 17200, et seq.; and (5) declaratory relief. Id.

On August 29, 2018, Transamerica moved to dismiss this action for lack of personal jurisdiction, improper venue, and lack of standing. Dkt. 12 ("Mot."). Transamerica also moved to dismiss the following claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6): tortious breach of the duty of good faith and fair dealing, violation of the UCL, and declaratory relief. Id. Plaintiff filed an opposition on September 17, 2018. Dkt. 28 ("Opp'n"). Transamerica filed a reply on September 24, 2018. Dkt. 29 ("Reply"). The Court took the motion under submission and ordered limited jurisdictional discovery to determine whether it could exercise personal jurisdiction over Transamerica. Dkt. 32. Plaintiff filed additional evidence and a supplemental brief on November 19, 2018. Dkt. 48 ("P. Supp."). Transamerica responded on December 3, 2018. Dkt. 41 ("D. Supp.").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**    'O'

| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
|---|---|---|---|
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

The Court held a hearing on December 10, 2018. The Court subsequently ordered the parties to provide supplemental briefing on Transamerica's contention that a choice-of-law issue existed with respect to plaintiff's claim for tortious breach of the duty of good faith and fair dealing. Dkt. 55. Plaintiff filed his supplemental brief on January 18, 2019, dkt. 56, and Transamerica filed its supplemental brief on January 25, 2019, dkt. 57.

Having carefully considered the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

### A.   Plaintiff's Purchase of Transamerica's Life Insurance Policy

Plaintiff purchased a universal life insurance policy (the "Policy") from Transamerica in 1999 on the lives of Sam F. Hamra and June S. Hamra. Compl. ¶¶ 1–2. The Policy was issued to the Trust from Transamerica's headquarters at 1150 South Olive Street in Los Angeles, California on July 22, 1999. Id. ¶¶ 13, 15, Ex. A ("Policy") at 2. When the Policy was purchased, Transamerica was incorporated in California. Compl. ¶ 15. The Policy indicated that Transamerica's President and Executive Vice President both signed the Policy in Los Angeles and that Transamerica's home office was in Los Angeles. Policy at 2, 16. The riders and endorsements that were issued along with the Policy were also signed in Los Angeles. Policy at 28, 29, 30, 33.

### B.   The Terms of Transamerica's Life Insurance Policy

The Policy provides $5,000,000 in death benefits and a guaranteed 4% interest on the accumulated value of the policy account ("Accumulation Value"), tax advantaged loans against the Accumulation Value, the cash value of the Accumulation Value if surrendered, and the proceeds from the sale of the Policy on the secondary market. Id. ¶¶ 3, 13, 19. Unlike term life insurance policy, the Policy does not require set monthly premiums to stay in-force. Id. ¶ 20. Rather, premiums are deposited into an account for the Policy, and each month, Transamerica withdraws a monthly deduction from the account to cover the cost of insurance ("COI"). Id. Payments greater than the monthly COI are credited to the Policy's Accumulation Value. Id. The Policy remains in-force until the insureds die, the Policy is surrendered, or the Policy lapses. Id. The Policy will lapse if the monthly deduction exceeds the monthly premium paid by the Trust plus the current cash value of the Policy. Id.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Prior to the issuance of the Policy, Transamerica prepared an illustration for the Trust showing how the Policy would perform if the Trust paid its planned monthly premiums and there was no change in interest or the MDR. Compl. Ex. F ("Original Illustration"). The illustration indicated that by the 28th year of the Policy, the Trust would accumulate approximately $3 million in cash value through surplus premiums and guaranteed interest. Id.; Compl. ¶ 41.

The Policy also contains an optional rider selected by plaintiff called the Endorsement to Modify Grace Period (the "Endorsement"). Id. ¶ 29. Under the Endorsement, Transamerica guaranteed that the Policy would remain in effect for a guaranteed period even if the Policy's Accumulation Value were insufficient to cover the COI, as long as plaintiff timely paid $78,994 in premiums a year in equal monthly installments through age 100. Id.; Opp'n at 3. However, if plaintiff fails to make a payment in full and on time, the Policy will lapse if the Accumulation Value is lower than the COI. Id.

### C. Transamerica's Increase to the Monthly Deduction Rate

The COI is determined by adding three numbers: an administrative charge; a monthly expense charge; and a number derived from the MDR set by Transamerica. Id. ¶ 21. The latter component of the monthly deduction is the most significant component of the COI and is determined by subtracting the Accumulation Value from the Policy's death benefit and multiplying the difference by one thousandth of the MDR. Id. ¶¶ 21, 22. On April 5, 2018, Transamerica delivered a "Notice of Monthly Deduction Rate Increase" (the "Notice") to the Trust announcing that it was increasing the MDR for the Policy by 39% on June 1, 2018, and that it would do so again on each of the next two anniversary dates on a compound basis. Id. ¶ 31. According to plaintiff, this translates to a 168% increase in the MDR over three years, and that in order for plaintiff to obtain the same benefits that Transamerica illustrated at issuance, plaintiff will have to pay Transamerica millions of dollars in additional premiums to cover the monthly deductions. Id. ¶¶ 31–32.

In the Notice, Transamerica represents that it is implementing the MDR increase based on its "current expectations for future costs" pursuant to language in the Policy permitting Transamerica to increase the monthly deduction rates if there has been a change in its expectations as to certain "cost factors." Id. ¶ 34; Policy at 20. Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

contends that Transamerica's purported justification for the MDR increase is disingenuous because Transamerica's costs have not materially increased since issuance because national mortality rates have improved, interest rates are rising, corporate taxes are falling, and persistency is moving in insurers' favor. Id. ¶ 34.

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

When a defendant moves to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing that jurisdiction is proper." Boschetto v. Hansing, 539 F.3d 1011, 1015 (9th Cir. 2008) (citation omitted). Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1127 (9th Cir. 2010) (quoting Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). The plaintiff cannot simply rely on the "bare allegations" of its complaint; however, uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

Generally, personal jurisdiction exists if (1) it is permitted by the forum state's long-arm statute and (2) the "exercise of that jurisdiction does not violate federal due process." Pebble Beach, 453 F.3d at 1154–55. "California's long-arm statute is co-extensive with federal standards, so a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." Boschetto, 539 F.3d at 1015. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger, 374 F.3d at 801 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Depending on the nature of the contacts between the defendant and the forum state, personal jurisdiction is characterized as either general or specific.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### i. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quoting International Shoe, 326 U.S. at 317). A corporation's place of incorporation and principal place of business are the paradigmatic bases for general jurisdiction. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). Otherwise, "[t]he standard is met only by 'continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" King v. Am. Family Mut. Ins. Co., 632 F.3d 570, 579 (9th Cir. 2011) (quoting International Shoe, 326 U.S. at 318). The standard for general jurisdiction "is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1224 (9th Cir. 2011).

### ii. Specific Jurisdiction

A court may assert specific jurisdiction over a claim for relief that arises out of a defendant's forum-related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

(1) The defendant must perform an act or consummate a transaction within the forum, purposefully availing himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws;

(2) The claim must arise out of or result from the defendant's forum-related activities; and

(3) Exercise of jurisdiction must be reasonable.

Id.; see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of satisfying the first two prongs, and if either is not satisfied, personal jurisdiction is not established. Schwarzenegger, 374 F.3d at 802.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

In contracts cases, courts conduct a "purposeful availment" analysis to determine the first prong of the specific jurisdiction test. Id. Because a contract is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction," a court must evaluate four factors to determine whether purposeful availment has occurred: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. Burger King, 471 U.S. at 478–79. A single contract for the sale of goods to a plaintiff in the forum state may be sufficient for specific jurisdiction over a defendant, but only where the contract creates a "substantial connection" with the forum state. Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008). "The foreseeability of causing injury in another state is not a sufficient basis on which to exercise jurisdiction," without more. Gray & Co. v. Firstenberg Mach. Co., Inc., 913 F.2d 758, 760 (9th Cir. 1990).

If the plaintiff establishes the first two prongs regarding purposeful availment and the defendant's forum-related activities, then it is the defendant's burden to "present a compelling case" that the third prong, reasonableness, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth, 942 F.2d at 623.

### B. Rule 12(b)(3)

Pursuant to Rule12(b)(3), a defendant may move to dismiss a complaint for improper venue. If an action is filed in the "wrong division or district" a court may dismiss the action or, "if it be in the interest of justice" transfer the action to an appropriate district or division. 28 U.S.C. § 1406(a). In federal courts, the determination of where venue is appropriate "is governed entirely by statute." Zumba Fitness, LLC v. Brage, No. CV 11-5361-GHK (CWx), 2011 WL 4732812 (C.D. Cal. Oct. 6, 2011) (citing Leroy v. Great W. United Corp., 443 U.S. 173, 181 (1979)). When deciding a motion to dismiss for improper venue, unlike a Rule 12(b)(6) motion, the court need not accept the pleadings as true and may consider facts outside the pleadings. See R.A. Argueta v. Banco Mexicano, S.A., 87 F.3d 320, 324 (9th Cir. 1996). Once a defendant raises an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | **CIVIL MINUTES – GENERAL** | | | **'O'** |
|---|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | | |

objection to venue, the plaintiff bears the burden of establishing that the selected venue is proper. Rio Properties, Inc. v. Rio Intern. Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002). To defeat a motion to dismiss for improper venue, the plaintiff need only make a prima facie showing of proper venue.

### C.  Rule 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

### D.  Rule 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. (internal citations omitted).

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | | | |
|---|---|---|---|
| | **CIVIL MINUTES – GENERAL** | | **'O'** |
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986); see Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000).

### III. DISCUSSION

#### A. Personal Jurisdiction

The Court previously granted plaintiff's request for jurisdictional discovery because it had doubts as to whether any events related to the MDR increase occurred in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

California. The evidence subsequently filed with the Court demonstrates that this Court may exercise specific personal jurisdiction over Transamerica.

### i. Purposeful Availment

The first prong of the specific jurisdiction analysis concerns Transamerica's purposeful availment of the privileges of conducting activities in the California. See Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). For a case sounding in contract, "[a] showing that a defendant purposefully availed [itself] of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." Schwarzenegger, 374 F.3d at 802. Plaintiff provides facts that demonstrate Transamerica has purposefully availed itself of the privileges of this forum—namely, that Transamerica has registered with the California Secretary of State, Compl. ¶ 10, that Transamerica signed the Policy in Los Angeles—which provides part of the basis for plaintiff's claims, id., and that Transamerica employees who helped develop the MDR increases were employed in Los Angeles, P. Supp. at 4–5. Moreover, Transamerica operated its life products division in Los Angeles from at least 1991 through the end of 2017. Supp. at 2. These facts are not "random," "fortuitous," or "attenuated," see Burger King, 471 U.S. at 475, and instead sufficiently demonstrate purposeful availment of the privileges of conducting business in California with respect to plaintiff's claims. Transamerica's argument that it did not envision continuing and wide-reaching contacts with California when it issued the Policy is unpersuasive because the Policy was issued *from* Transamerica's home office in Los Angeles, and the Policy itself directed plaintiff to send all requests to add, cancel, or exercise the benefits of the Policy to the Los Angeles office. Dkt. 48-5 at 40(3), 43.

### ii. Forum-Related Activities

The second prong requires that plaintiff's claims arise out of, or relate to, Transamerica's forum-related activities. See Picot, 780 F.3d at 1211. The Ninth Circuit applies a "but for" test to determine whether claims relate to forum-related activities. Ballard v. Savage, 65 F.3d 1495, 1500 (9th Cir. 1995). Under this test, the question is: but for Transamerica's conduct in California, would the Trust's claims have arisen? See id. at 1500. As one district court in the Ninth Circuit has observed, "any event in the causal chain leading to the plaintiff's injury is sufficiently related to the claim to support the exercise of specific jurisdiction." Dubose, 2017 WL 2775034, at *3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

With respect to this prong, Transamerica argues that the preparation for and ultimate decision to implement the MDR increase occurred in Iowa. MTD at 12. Although the final decisions with respect to the MDR increase were made in Iowa, the Court must consider other relevant factors, such as where the Policy was executed and the circumstances comprising the "but for" chain of causation leading to plaintiff's alleged injuries. The Court notes that Transamerica signed the Policy in Los Angeles. Policy at 2. Additionally, the Court finds that the original pricing of the policies is, indeed, a link in the causal chain leading to plaintiff's alleged breach of contract injury. Plaintiff's claims stem from Transamerica's actions with respect to the MDR increase on the Policy. That alleged breach, in turn, is premised upon Transamerica's in-state conduct where it priced and issued the original policies. Whether the MDR increase was meant to recoup past losses implicates the original pricing assumptions made by Transamerica. P. Supp. At 2. Therefore, the original pricing—which occurred in California—is a necessary link in the causal chain leading to Transamerica's alleged breach of contract.

Moreover, plaintiff demonstrates that Transamerica employed actuaries Pamela Wu and Wen Jung Ho in Los Angeles who performed at least some of the actuarial analysis leading to the MDR increase. P. Supp. at 4–5. According to John Daniel Mahoney, Transamerica's 30(b)(6) corporate representative, the work performed by Lu in Los Angeles was "necessary to – ultimately to estimate the financial impact of the MDR increases . . . ." Id. at 5; Dkt. 48-3 at 65:18–66.6. Mahoney also stated that the work performed by Ho in Los Angeles was "necessary and integral to the recommendation to increase the MDRs on the TransSurvivor policies . . ." P. Supp. at 6; Dkt. 48-3 at 65:6–13. Therefore, plaintiff has shown that but-for Transamerica's conduct in California and the work of its Los Angeles employees in effectuating the MDR increase with respect to the Policy, plaintiff's claims would not have arisen. Plaintiff demonstrates an "affiliation between the forum and the underlying controversy." BMS, 137 S. Ct. at 1781 (quotations and citations omitted).

### iii. Reasonableness

Plaintiff has established the first two prongs regarding purposeful direction and the defendant's forum-related activities, and therefore it is the defendant's burden to "present a compelling case" that the third prong, the "reasonableness" of personal jurisdiction in the Central District, has not been satisfied. Schwarzenegger, 374 F.3d at 802 (quoting Burger King, 471 U.S. at 477). The third prong requires the Court to balance seven

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
|---|---|---|---|
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

factors: (1) the extent of the defendant's purposeful availment, (2) the burden on the defendant, (3) conflicts of law between the forum state and the defendant's state, (4) the forum's interest in adjudicating the dispute, (5) judicial efficiency, (6) the plaintiff's interest in convenient and effective relief, and (7) the existence of an alternative forum. Roth, 942 F.2d at 623.

Transamerica does not argue that exercising specific personal jurisdiction in the Central District would not "comport with fair play and substantial justice," Schwarzenegger, 374 F.3d at 802; and the Court concludes that specific jurisdiction in the Central District would not be unreasonable. The Court finds that Transamerica has established numerous contacts with the forum district, and that to litigate the matter in the Central District of California as opposed to the Northern District of Iowa would not impose a considerable burden on Transamerica. There are also witnesses and evidence located in Los Angeles. Taken together, the applicable factors demonstrate that the exercise of personal jurisdiction over Transamerica is reasonable in light of the extent to which it has injected itself into the forum. Accordingly, the Court finds that the exercise of personal jurisdiction over Transamerica is proper under the Due Process Clause.[1]

**B.     Venue**

Under the general venue statute, 28 U.S.C. § 1391, a civil action may be brought in any of the following:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

---

[1] Because the Court concludes there is specific jurisdiction with respect to Transamerica, the Court need not reach the issue of whether Transamerica is subject to general jurisdiction in this forum.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
|---|---|---|---|
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Transamerica asserts that venue is improper because the events giving rise to plaintiff's claims did not occur in California. Mot. at 13.

For venue purposes, corporations (and other entities that can sue or be sued in their own names) are "deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). Moreover, in states with multiple districts such as California, a corporate defendant is deemed to "reside" in any district in which its "contacts" would subject it to personal jurisdiction at the time an action is commenced, if that district were a separate state; or, if there is no such district, in whichever district it has the "most significant" contacts. 28 U.S.C. § 1391(d). As discussed *supra*, Transamerica is subject to the Court's personal jurisdiction due to events that occurred in the Central District of California and thus, for venue purposes, Transamerica resides in this District. Accordingly, venue is proper pursuant to § 1391(b)(1).

Accordingly, Transamerica's motion to dismiss for improper venue is **DENIED**.

Transamerica also seeks to transfer this action to the Northern District of Iowa where two cases against Transamerica, involving different MDR increases, are pending. Mot. at 13. The party seeking to transfer venue bears the burden of showing that convenience and justice require transfer. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 278-279 (9th Cir. 1979); Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."). The decision to transfer lies within the sound discretion of the trial judge. See Sparling v. Hoffman Constr. Co., 864 F.2d 635, 639 (9th Cir. 1988).

In analyzing the "interests of justice," a number of factors are relevant, including the following: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29-30 (1988); Jones v. GNC Franchising, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Other factors that may be considered are: the enforceability of the judgment; the relative court congestion in the two forums; and which forum would better serve judicial economy. 17 Moore's Federal Practice § 111.13[1][c] (3d ed. 1997). However, "[s]ubstantial weight is accorded to the plaintiff's choice of forum, and a court should not order a transfer unless the 'convenience' and 'justice' factors set forth above weigh heavily in favor of venue elsewhere." Catch Curve, Inc. v. Venali, Inc., 2006 U.S. Dist. LEXIS 96379, at *3–4 (C.D. Cal. Feb. 27, 2006).

Transamerica argues that venue is improper in the Central District of California because it will be more convenient for the parties to litigate the case in Iowa as most of the potential witnesses are in Iowa and because plaintiff, who resides in Illinois, and his New York counsel, are closer to Iowa than Los Angeles. Mot. at 13–14. Having considered the parties' arguments, the Court finds that Transamerica has not met its burden of showing that convenience and justice require transfer.

      **i.    Convenience Factors**

Although it appears that more of Transamerica's employee witnesses reside in the Northern District of Iowa than reside in the Central District of California, the Court accords less weight to their domicile because Transamerica can compel their attendance at trial in this district if necessary. See e.g., Allstar Mktg. Grp., LLC v. Your Store Online, LLC, 666 F. Supp. 2d 1109, 1132 (C.D. Cal. 2009) (Morrow, J.). The convenience of non-party witnesses, however, often figures most prominently in deciding a motion to transfer. Flotsam of Cal., Inc. v. Huntington Beach Conf. & Visitors Bureau, No. C 06-7028 MMC (MEJ), 2007 WL 4171136 (N.D. Cal. Nov. 26, 2007); Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1161 (S.D. Cal. 2005). Plaintiff contends that the only non-party witness of which he is aware of is Phyllis Dilbeck, who is located in Glendale, California, and is subject only to the Central District of California's subpoena power. Opp'n at 13. Although the presence of many of the party witnesses in the North District of Iowa weighs in favor of transferring this case to that district, the presence of a non-party witness in the Central District of California weighs more heavily against transfer.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### ii. Plaintiff's Choice of Forum

Where relevant factors do not strongly favor transfer, "the plaintiff's choice of forum should rarely be disturbed." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947). Although the plaintiff does not reside in this district, the parties' contacts with this district weigh in favor of deference to plaintiff's choice of forum. As set forth *supra*, the Policy affected by Transamerica's MDR increase was signed by Transamerica in this District and a portion of the actuarial analysis leading to the MDR increase was performed in this District. The Court gives no weight to Transamerica's contention that it will be more convenient for plaintiff to litigate this case in Iowa because, notwithstanding the distance from Illinois or New York to Los Angeles, plaintiff chose the Central District of California as his forum.

### iii. Other Factors

Transamerica makes no argument with respect to the other factors. Thus, the Court concludes that Transamerica has failed to meet its burden of showing that any of the Jones factors upsets the weight the Court gives to the Trust's choice of forum.

Accordingly, Transamerica's motion to transfer venue is **DENIED**.

### C. Standing

Defendant argues that plaintiff cannot establish Article III standing because he has not suffered an injury-in-fact. Mot. at 24. According to defendant, plaintiff is in no danger of losing coverage because he purchased the Policy with the Endorsement which was designed to ensure coverage even if the Accumulation Value drops to zero and the plaintiff's original monthly premium amount of $6,583 no longer covers the COI, so long as the premium amount of $6,583 is paid each month. Id. Defendant's argument fails because the Endorsement only protects the death benefit, and plaintiff alleges that Transamerica has wrongfully denied him other benefits due under the policy—specifically the accumulation value, interest, and amounts available for loans or through surrender. The Court finds that the diminution of these benefits is sufficient to establish Article III standing.

Moreover, plaintiff alleges that Transamerica's MDR increase will cause a reduction in the economic value of the Policy, even if plaintiff continues to make the same premium payments he has always made. See Compl. ¶ 41 ("In 1999, Transamerica

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

represented to the Trust that if it paid $78,996.00 into the Policy each year, the Policy would have a cash value of $2,894.906.00 by Policy Year 28. On April 17, 2018, Transamerica sent the Trust a revised illustration which indicates that if the Trust continues to pay $78,996.00 into the Policy each year, it will have a cash value of $0.00 by Policy Year 28, millions of dollars in value having been taken by Transamerica."). Plaintiff thus also alleges a cognizable injury with respect to the reduction of the economic value of the policy. See Maya v. Centex Corp., 658 F.3d 1060, 1070–71 (9th Cir. 2011) ("A current reduction in the economic value of one's home is a cognizable injury for constitutional purposes.").

Accordingly, the Court **DENIES** Transamerica's motion to dismiss plaintiff's complaint for lack of standing.

### D.     Failure to State a Claim

#### i.     Tortious Breach of Duty of Good Faith and Fair Dealing

As an initial matter, the parties dispute whether Illinois, Iowa, or California law governs plaintiff's tortious breach claim. The Court applies California's choice of law rules to resolve this question. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941); Downing v. Abercrombie & Fitch, 265 F.3d 994, 1005 (9th Cir. 2001) ("In a diversity case, federal courts apply the substantive law of the forum in which the court is located, including the forum's choice of law rules.") (internal quotation marks and citation omitted). In California, courts utilize the following three-step "governmental interest" test: (1) the court examines the substantive laws of each jurisdiction to determine whether the laws differ as applied to the present facts; (2) if application of the laws do differ, the court must determine whether a "true" conflict exists in that each relevant jurisdiction holds an interest in having its law applied; and (3) if more than one jurisdiction has a legitimate interest, the court must identify and apply the law of the state whose interest would be more impaired if its law is not applied. Id.; Abogados v. AT&T, Inc., 223 F.3d 932, 934 (9th Cir. 2000). "Only if both states have a legitimate but conflicting interest in applying its own law will the court be confronted with a 'true conflict' case." Downing, 265 F.3d at 1005 (internal citation omitted).

In Thompson v. Transamerica, No. 2:18-cv-05422-CAS-GJS, Dkt. 82, this Court held that a claim for tortious breach under California law could be based upon Transamerica's MDR increases. The Court concludes that the same potential exists in the instant case based on plaintiff's allegations, which are similar to the allegations in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      'O'

| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
|---|---|---|---|
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

Thompson action. However, it appears that neither Iowa or Illinois law would recognize a claim for tortious breach based on plaintiff's allegations. See Cramer v. Ins. Exchange Agency, 675 N.E.2d 897, 900 (Ill. 1996) ("[T]he tort of bad faith is not a separate and independent tort action that is recognized in Illinois."); Thornton v. Am. Interstate Ins. Co., 897 N.W.2d 445, 461 (Iowa 2017) ("An insured may bring a third-party bad-faith claim when an insurer's bad faith refusal to settle a third-party's claim against the insured within the policy limits exposes the insured to monetary liability exceeding policy limits. A first-party bad-faith claim involves an insured's attempt to recover for his or her own losses allegedly covered under the insurance policy.") (internal quotation marks and citations omitted). Plaintiff has provided no authority establishing that Iowa or Illinois law would recognize a claim for tortious breach outside the context of a coverage dispute.[2]

Given that the Court has determined that there is a potential that California law would recognize plaintiff's claim for tortious breach but Iowa and Illinois law would not, the Court must analyze whether a "true conflict" exists in that each relevant jurisdiction has an interest in having its law applied. Although "California has demonstrated an interest in regulating the practices of insurers within this state, as well as in affording redress to California residents damaged by unfair practices of insurers," Zimmerman v. Allstate Ins. Co., 179 Cal. App. 3d 840, 846 (1986), California's interests are not legitimately implicated here because plaintiff lives in Illinois, the insureds live in Florida, and Transamerica's decision to increase the MDRs occurred at least a decade after it moved its headquarters from California to Iowa. Mot. at 3, 6; Dkt. 57 at 7. See Van Winkle v. Allstate Ins. Co., 290 F. Supp. 2d 1158, 1163–64 (C.D. Cal. 2003) ("[T]he interests of California are at least reduced when a non-resident seeks the benefits of its laws.").

---

[2] Plaintiff analogizes California's claim for tortious breach to an Illinois statute providing an extracontractual remedy against an insurer "wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious or unreasonable . . ." IL ST CH 215 § 5/155 ("Section 155"). Even assuming that Section 155 provides the basis for a claim for tortious breach in Illinois, plaintiff's allegations do not state a claim for violation of Section 155 because he does not allege that Transamerica has denied coverage or has unreasonably delayed in settling a claim.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

In contrast, both Iowa and Illinois have significant interests in applying their respective laws to this case. See York v. Globe Life and Acc. Ins. Co., 734 F. Supp. 340, 344 (C.D. Ill. 1990) ("Illinois has a strong policy favoring limitation of bad faith claims against insurance companies in order to reduce the rates that everyone pays."); Cunningham v. PFL Life Ins. Co., 42 F. Supp. 2d 872 (N.D. Iowa 1999) (explaining that Iowa has a "clear" interest in regulating the manner in which Iowa insurance companies do business). Further, California law recognizes "that a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders, and in being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 98 (2010).

Although plaintiff contends that California has an interest here because the Policy was purchased from Transamerica while it was domiciled in California and because some analysis supporting the decision to increase the MDRs occurred in California, the Court is not persuaded because the ultimate decision to increase the MDRs occurred in Iowa and plaintiff's injury occurred in Illinois. Although California has an interest in regulating the conduct of insurers in California, the Court finds that this interest would not be significantly impaired if it were not able to extend its law on tortious breach to a case involving non-resident parties and conduct that largely occurred out-of-state. See McCann, 48 Cal. 4th at 99 ("California's interest in applying its laws providing a remedy to, or facilitating recovery by, a potential plaintiff in a case in which the defendant's allegedly tortious conduct occurred in another state is less than its interest when the defendant's conduct occurred in California."). On the other hand, Iowa's and Illinois's interest in managing the costs of insurance by determining whether, and to what extent, tort remedies may be awarded against insurance companies, would be far more impaired by the application of California's law governing tortious breach claims.

In light of the foregoing, the Court concludes that California law does not govern plaintiff's tortious breach claim, and that neither Iowa and Illinois law would recognize a claim for tortious breach based on plaintiff's allegations. Accordingly, the Court **DISMISSES** plaintiff's claim for tortious breach of the duty of good faith and fair dealing.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

### ii.    Unfair Competition

To state a claim for violation of the UCL, a plaintiff must allege an "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Because [the UCL] is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." Boschma v. Home Loan Ctr., Inc., 198 Cal. App. 4th 230, 252 (Cal. Ct. App. 2011) (internal quotation marks and citation omitted).

Plaintiff alleges that Transamerica violated the unfair prong of the UCL by:

a. Marketing and selling the Policy on the premise that it was a life insurance product that would provide a certain death benefit for a certain cost and duration and subsequently taking steps to prevent Plaintiff from receiving the promised benefits by suddenly, massively, and unlawfully increasing the cost of the Policy through the COI Increase;

b. Increasing the MDR in a manner not permitted by the express terms of the Policy in order to improve its profitability and financial position and to cause Plaintiff to pay unjustifiable premiums or forfeit the Policy by way of surrender or lapse;

c. After the sale of the Policy, continuing to send annual reports, policy servicing statements, illustrations and other documents and correspondence to Plaintiff without disclosing that it was considering; and then resolved to implement, a sudden, dramatic, and cost-prohibitive increases in the MDR;

d. Providing a false and misleading explanation to Plaintiff of the grounds for the COI Increase.

Compl. ¶ 71.

To state a claim under the "unfair" prong, a plaintiff must prove that a "business practice . . . violates established public policy" or is "immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits." Eisen v. Porsche Cars North America, Inc., No. CV 11–9405 CAS (FEMx), 2012 WL 841019, at *5 (C.D. Cal. Feb. 22, 2012) (citing McKell v. Washington Mut., Inc., 142 Cal. App. 4th 1457, 1473 (2006)). Transamerica argues that plaintiff's UCL claim sounds in fraud to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  'O'

| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
|---|---|---|---|
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

the extent it is based on misrepresentations and omissions, and therefore plaintiff must meet the pleading requirements of Rule 9(b). Mot. at 17. Plaintiff, however, specifically alleges that his claim arises under the "unfair" prong of the UCL. Compl. ¶ 71. The Court finds that, fairly read, plaintiff's alleged UCL violations are all based on the theory that Transamerica raised the MDR in an unconscionable manner and are sufficient to state a claim under the "unfair" prong of the UCL. Although plaintiff alleges that Transamerica failed to notify plaintiff of the MDR increase and then provided a false explanation for the grounds of the MDR increase, plaintiff does not allege that Transamerica made these misrepresentations or omissions for the purpose of inducing action by the plaintiff.

Transamerica further argues argues that plaintiff's UCL claim fails because the UCL does not apply to out-of-state conduct caused by out-of-state defendants and because plaintiff has an adequate remedy at law. Mot. at 17. With respect to Transamerica's extraterritoriality argument, the Court finds that the plaintiff has sufficiently alleged that Transamerica's unfair acts occurred in California because Transamerica allegedly priced, signed, and issued the Policy in California. See Compl. ¶ 10. And in response to Transamerica's argument that plaintiff has an adequate remedy at law, plaintiff argues that a legal remedy would fail to stop Transamerica's wrongful conduct and that, without injunctive relief, plaintiff will be forced to file multiple lawsuits in order to recover the depleted cash value and interest thereon. Opp'n at 20. The Court declines to find, at this stage, that plaintiff has an adequate remedy at law.

Accordingly, the Court **DENIES** Transamerica's motion to dismiss plaintiff's UCL claim.

### iii. Declaratory Relief

The Trust seeks a declaration as to the parties' respective rights and obligations under the Policy. Defendant argues that plaintiff's declaratory relief claim is duplicative of plaintiff's breach of contract claim as both require the Court to interpret the relevant language and determine if the MDR increases violated the Policy. Mot. at 23.

"The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate." Fed. R. Civ. Proc. 57. Moreover, declaratory relief is proper "where a breach of contract claim will not settle all of the contractual issues concerning which plaintiff seeks declaratory relief." StreamCast Networks, Inc. v. IBIS LLC., No. CV 05-04239 MMM (Ex), 2006 WL 5720345, at *4

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     'O'

| Case No. | 2:18-cv-06262-CAS-GJSx | Date | February 6, 2019 |
|---|---|---|---|
| Title | MICHAEL K. HAMRA v. TRANSAMERICA LIFE INSURANCE COMPANY | | |

(C.D. Cal. May 2, 2006). It is unclear at this juncture whether resolution of plaintiff's breach of contract claim would necessarily resolve the parties' prospective rights under the Policy. To the extent declaratory relief may overlap with plaintiff's other requests for relief, plaintiff may be required to make an election of remedies if he prevails on multiple claims. Accordingly, Transamerica's motion to dismiss plaintiff's declaratory relief claim is **DENIED**.

## IV. CONCLUSION

The Court **DENIES** defendant's motion to dismiss for lack of personal jurisdiction.

The Court **DENIES** defendant's motion to dismiss for improper venue.

The Court **DENIES** defendant's motion to transfer venue.

The Court **DENIES** defendant's motion to dismiss for lack of standing.

The Court **DISMISSES** plaintiff's claim for tortious breach of the duty of good faith and fair dealing.

The Court **DENIES** defendant's motion to dismiss plaintiff's Unfair Competition claim.

The Court **DENIES** defendant's motion to dismiss plaintiff's claim for declaratory relief.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |